UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,           17cv1117

               -against-           MEMORANDUM & ORDER

TERMINUS ENERGY, INC., *et al.*,

             Defendants,
             -and-

MARIA PANTELAKIS,

             Relief Defendant.

---------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        The Securities and Exchange Commission (the "Commission") moves for the approval of settlements with Defendants Terminus Energy, Inc. ("Terminus"), Danny Pratte, George Doumanis, Emanuel Pantelakis, and against Relief Defendant Maria Pantelakis ("M. Pantelakis"), as well as the entry of consent judgments against these parties. For the reasons that follow, the Commission's motions are granted in part and denied in part.

BACKGROUND

        The Commission brings this enforcement action against Terminus, its directors and officers, and one of its brokers for violations of the federal securities laws in the offering of $7.9 million in Terminus securities to 200 investors worldwide.[1] Terminus was a Delaware corporation in the fuel cell technology business whose common stock was a "penny stock" as

---

[1] This Court previously entered a consent judgment against Joseph Alborano, who solicited investors through private placement offerings. (ECF No. 69.) This case remains pending against Joseph Pittera, Terminus' president and legal counsel.

defined in the Securities Exchange Act of 1934. Pratte was Terminus' CEO, Doumanis was an operations manager, and Pantelakis was a director. M. Pantelakis was a passive recipient of roughly $300,000 derived from the alleged fraud.

In broad strokes, the Commission alleges that Terminus and its directors or officers deceived investors as to (1) the progress, profitability, and viability of a fuel cell that Terminus was purportedly developing; (2) their misappropriation of investor proceeds and diversion of those proceeds to pay unregistered brokers; and (3) Doumanis and Pantelakis' legal and disciplinary history. In particular, Doumanis had previously pled guilty to securities fraud, and the Commission barred him from participating in any penny stock offering or associating with any broker or dealer. And for his part, Pantelakis was barred by FINRA from associating with any FINRA member.

The Commission subsequently settled with Terminus, Pratte, Doumanis, Pantelakis, and M. Pantelakis. (ECF No. 76.) It moves for approval of these settlements and the entry of consent judgments against these defendants. (ECF No. 78.) No opposition papers were filed.

DISCUSSION

In determining whether to approve a consent decree in a government enforcement action, a court considers whether the consent decree is "fair and reasonable" and, if injunctive relief is sought, whether the public interest would be disserved. SEC v. Citigroup Glob. Mkts., Inc., 752 F.3d 285, 294 (2d Cir. 2014). Absent a "substantial basis in the record for concluding that the proposed consent decree" is not fair, not reasonable, or would disserve the public interest, "the district court is required to enter the order." Citigroup, 752 F.3d at 294. In evaluating whether the consent decree is fair and reasonable, the court should "assess (1) the

basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." Citigroup, 752 F.3d at 294-95 (internal citations omitted).

Having reviewed the Commission's proposed settlements with Doumanis, Pantelakis, and M. Pantelakis, this Court finds no substantial basis in the record to conclude that they are not fair and reasonable or that they would disserve the public interest. See Citigroup, 752 F.3d at 294. As for the proposed settlements with Terminus and Pratte, the Commission requests a 90-day deferment of any ruling. While these requests are unobjectionable, the fact that Terminus has not appeared through counsel is problematic. To be sure, the Commission's motion acknowledges the rule in this circuit that a corporation may only appear in a federal action through counsel. See Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983). The Commission articulates the underlying rationale as avoiding the burden of poorly conducted proceedings on the judicial system. It reasons that the rule should be relaxed in this circumstance because Terminus is not litigating, asserting a claim, or even appearing in this matter.

Certainly, the Commission's position has some intuitive appeal: Terminus has not appeared in this action, Terminus seems to be impecunious,[2] and any pro bono corporate appearance would be for a limited purpose resolving the Commission's claims against Terminus. Even more poignantly, Terminus' failure to appear through counsel would simply (in all likelihood) subject it to "a default judgment virtually identical to the consent judgment currently sought by the parties." N.Y. State Teamsters Conference Pension & Ret. Fund v. Comac

---

[2] The consent judgment as to Terminus requires it to satisfy a $1,623,227.96 disgorgement obligation by paying $39,873.35 to the Commission.

Builders Supply Corp., 2008 WL 150515, at *1 n.1 (N.D.N.Y. Jan. 14, 2008). Moreover, authority from this circuit suggests that some exceptions—albeit narrow and arguably limited to specific factual scenarios—apply to the general rule that corporations may not appear pro se. See Sanchez v. Marder, 1995 WL 702377, at *1-2 (S.D.N.Y. Nov. 28, 1995) (citing, inter alia, In re Las Colinas Dev. Corp., 585 F.2d 7, 11 (1st Cir. 1978), Fraass Survival Sys., Inc. v. Absentee Shawnee Econ. Dev. Auth., 817 F. Supp. 7, 10-11 (S.D.N.Y. 1993); In re Holliday's Tax Servs., Inc., 417 F. Supp. 182, 185 (E.D.N.Y. 1976)) (discussing situations in which a layman possesses extraordinary legal ability, where a tribal government seeks to represent itself, or where an impecunious, closely held corporation seeks to represent itself in a bankruptcy proceeding); see also Jacobs v. Patent Enf't Fund, Inc., 230 F.3d 565, 568-69 (2d Cir. 2000) (explaining that an exception exists where "a corporation fails to assert an available defense to an action against it . . . due to the negligence, bad faith, or fraud of the corporation's officers" (internal citations omitted)).

    Upon consideration of the relevant authority, this Court declines the Commission's invitation to carve out an exception to the norm that a corporation must appear through legal counsel in this instance. The Supreme Court has noted that the smattering of cases—including Holliday's Tax Services—holding that "artificial entities may be represented by persons who are not licensed attorneys" "neither follow federal precedent, nor have themselves been followed." Rowland v. Ca. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 n.5 (1993); see Rowland, 506 U.S. at 201-02 (reiterating that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel," aside from "a few aberrant cases"). Likewise, the Second Circuit does not appear to have adopted the exceptions enumerated in Sanchez. See Brown v.

4

John H. Beyer, Inc., 1998 WL 328631, at *1 (S.D.N.Y. June 22, 1998). Thus, whatever ongoing vitality these exceptions may have is dubious.

But even setting aside the Supreme Court and the Second Circuit's apparent disfavor of these exceptions, this Court finds no reason to apply them here because this case does not raise factually analogous circumstances. As an initial matter, while there is no reason to doubt the Commission's representation that Terminus is financially incapable of retaining counsel, Terminus has not made any showing that it in fact cannot afford legal representation. Relatedly, any perceived injustice from denying a pro se corporate petitioner access to bankruptcy relief that animated Holliday's Tax Services is much more nebulous when applied to a corporate defendant who seeks to appear without counsel in a civil case. See Sanchez, 1995 WL 702377, at *2 (noting Holliday's Tax Services' emphasis that in the bankruptcy context, a rule requiring destitute debtor-corporations to appear through counsel may unduly restrict access to relief). Further, the exception articulated in Jacobs does not apply because there is no indication that Terminus has any viable defense to the Commission's claims.

Applying the rule that a corporation must appear through counsel in this action simply yields the conclusion that Terminus has not yet appeared and that the Commission may move for a default judgment against it if it fails to appear through counsel. Carlone v. Lion & the Bull Films, Inc., 861 F. Supp. 2d 312, 218 (S.D.N.Y. 2012). Concededly, there may be some loss of efficiency in requiring Terminus to obtain counsel. But courts have rejected similar efficiency rationales as insufficient to overcome the rule against pro se corporate appearances. See, e.g., Comac Builders Supply Corp., 2008 WL 150515, at *4. Moreover, whatever loss of efficiency there may be from requiring Terminus to obtain counsel or face a default judgment is mitigated by the fact that the Commission seeks to defer a ruling on the settlement with

Terminus for at least 90 days.

Finally, as a conceptual matter, the requirement that a corporation must appear through counsel is not only grounded in the desire to avoid poorly conducted proceedings, but also in the recognition that "the lay litigant lacks many of the attorney's ethical responsibilities" and that "since a corporation is an artificial entity, it can only act through agents . . . acceptable to the court." Sanchez, 1995 WL 702377, at *1 (citations omitted). Thus, in rejecting the contention that corporations may execute stipulations of settlement or even negotiate settlements pro se, the Second Circuit explained as follows:

> Attorneys do not exist merely to act as information conduits or to communicate with opposing counsel. Rather, they inform, advise, counsel, explain matters of law, and do much more. It is impossible to know what role an attorney . . . would have played, but it is likely that she would have played some role in the negotiation beyond simply passing along information to plaintiffs . . . .

Grace v. Bank Leumi Tr. Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006). Under the circumstances of this case, Terminus must retain legal counsel to proceed with this litigation; otherwise, this Court will entertain an application for leave to file a motion for default judgment by the Commission.

## CONCLUSION

For the foregoing reasons, the Commission's motions are granted as to Doumanis, Pantelakis, and M. Pantelakis, and final judgments as to those defendants will issue separately. Pursuant to the Commission's request, this Court defers its rulings on the proposed settlements as to Terminus and Pratte, and the Commission's motion for approval of those proposed settlements is denied without prejudice.

The Commission shall re-file its motions and supporting papers as to Terminus and Pratte consistent with this Memorandum & Order by no later than July 19, 2019, with the time to file opposition and reply papers to be determined in accord with Local Civil Rule 6.1.

The Commission is further directed to serve a copy of this Memorandum & Order on Terminus forthwith and file a certificate of service on the docket. The Clerk of Court is directed to terminate the motion pending at ECF No. 78.

Dated: April 11, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.